IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 13-00393-01-CR-W-DGK |
| LEON D. STINNETT, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS

Before the court is Defendant's motions to suppress. Defendant moves the Court to suppress all items seized from the vehicle he was driving on November 2, 2013, as well as his November 4, 2013 statements. For the following reasons, Defendant's motion should be denied.

### *I. BACKGROUND*

An indictment was returned on November 14, 2013, charging Defendant with one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

Currently pending before the Court is Defendant's motion to suppress (Doc. No. 29). The government appeared at the suppression hearing by Assistant United States Attorney Rudolph Rhodes. Defendant was present, represented by appointed counsel David Kelly. The government called Kansas City, Missouri Police Officer John Pickens and Kansas City, Missouri Police Detectives Aaron Hendershot, Owen Farris and James Manley to testify. The following exhibits were admitted into evidence:

    Government's Exhibit 1:    Photo of driver's side of Honda Accord
    Government's Exhibit 2:    Photo of inside driver's seat

1

| | | |
|---|---|---|
| Government's Exhibit 3: | | Photo of handle of Jimenez, Model J.S. Nine, 9mm pistol |
| Government's Exhibit 4: | | Photo Jimenez pistol (close up) |
| Government's Exhibit 5: | | Photo of two plastic baggies containing marijuana inside front center console of Honda Accord |
| Government's Exhibit 6: | | Photo of marijuana |
| Government's Exhibit 7: | | Photo of marijuana and Jimenez pistol recovered from Honda Accord |
| Government's Exhibit 8: | | Photo of the rear passenger compartment, armrest down |
| Government's Exhibit 9: | | Photo of Glock pistol inside trunk of Honda Accord |
| Government's Exhibit 10: | | Photo of Glock pistol recovered from trunk (close up) |
| Government's Exhibit 11: | | Signed <u>Miranda</u> waiver form |
| Government's Exhibit 12: | | Report prepared by Derrick Merrill |
| Government's Exhibit 13: | | Report prepared by Owen Farris |
| Government's Exhibit 14: | | Report prepared by James Manley |

I took judicial notice of the criminal complaint filed in this matter (Tr. at 64).

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. On Saturday, November 2, 2013, Kansas City, Missouri Police Officer John Pickens was on duty at a funeral of a gang member due to the belief that there could be violent activity (Tr. at 3, 12, 36; Gvt. Exh. 12). An undercover detective who was on site recognized Defendant, performed a computer check and relayed to Officer Pickens that Defendant had outstanding city warrants for assaulting police and eluding police (Tr. at 3-4, 13, 59; Gvt. Exh. 12). The officers also knew Defendant was a gang member, did not have a valid driver's license, and was on probation and parole for robbery and burglary (Tr. at 30, 53; Gvt. Exh. 12).

2. Defendant left the funeral, got into a Honda and drove to a gas station (Tr. at 4; Gvt. Exh. 12). The plates on the Honda were registered to a Pontiac (Tr. at 25). Before Officer Pickens could perform a stop on Defendant, Defendant exited the gas station and began driving southbound on Cleveland (Tr. at 4; Gvt. Exh. 12). Officer Pickens activated the lights

2

and siren on his unmarked vehicle, but Defendant did not stop (Tr. at 4, 13-14, 26-27; Gvt. Exh. 12). Instead, Defendant accelerated away from the patrol vehicle and turned westbound on 47th Street (Tr. at 4; Gvt. Exh. 12). Defendant became stuck in traffic, honked his horn, drove around the vehicles in front of him, turned southbound on Benton, accelerated away from police and pulled back into the parking lot where the funeral was being held (Tr. at 4, 30; Gvt. Exh. 12). Defendant parked next to the church's front door (Tr. at 4, 14).

  3. Upon arrival in the church parking lot, Officer Pickens exited his patrol vehicle, approached Defendant and removed Defendant from the Honda (Tr. at 5, 14, 30). Defendant was arrested due to his outstanding warrants (Tr. at 31). Officer Derek Merrill removed Ronnell Parks from the front passenger seat of the Honda and Officer Travaglione removed Michael McMillian from the rear passenger seat (Tr. at 6, 7, 14-15). Both passengers were also arrested (Gvt. Exh. 12).

  4. Officer Aaron Hendershot provided security behind Officer Pickens as Officer Pickens placed Defendant on the ground to handcuff him (Tr. at 5, 31). As he was doing so, Officer Hendershot observed the butt of a silver and black handgun under the driver's seat from his location outside the vehicle (Tr. at 5, 15, 31, 34; Gvt. Exh. 12). Officer Pickens stood up and also observed the gun hanging out from underneath the front of the driver's seat (Tr. at 16-17).

  5. A large crowd began congregating outside the church, so Officer Pickens immediately put Defendant into his vehicle; Officer Travaglione drove the Honda to a parking lot four blocks north (Tr. at 6, 21; Gvt. Exh. 12). The officers moved locations so that they would not disturb the funeral and for officer safety due to the threat of danger (Tr. at 22). The firearm was not secured or photographed before the Honda was moved (Tr. at 27, 37).

3

6. All three occupants of the Honda were also transported to this parking lot (Tr. at 7). The three individuals were kept separated while waiting for a patrol wagon to transport them to police headquarters for booking (Tr. at 8, 23).

7. Officer Hendershot observed the firearm to be in the exact same location as where he initially saw it (Tr. at 32).

8. Defendant advised Kansas City, Missouri Police Department Detective James Manley that the Honda belonged to his girlfriend (Tr. at 55).

9. An inventory search was performed pursuant to Kansas City, Missouri Police Department policy (Tr. at 38). Pursuant to the policy, searches are conducted when the driver of the vehicle is arrested (Tr. at 38).

10. Officer Pickens was responsible for overall recovery of the scene (Tr. at 8). A gun was recovered from under the driver's seat of the vehicle; another gun was recovered from the trunk (Tr. at 8, 33; Gvt. Exhs. 2, 3, 4, 8, 9). Two baggies of marijuana were recovered from the front center console (Tr. at 8, 9-10; Gvt. Exhs. 5, 6). The Honda was towed after the inventory was complete (Tr. at 38; Gvt. Exh. 12).

11. Kansas City, Missouri Police Department Detective Owen Farris interviewed Defendant at 2:36 p.m. on November 2, 2013 (Tr. at 41; Gvt. Exh. 13). The interview took place in an interview room on the second floor of police headquarters (Tr. at 41-42; Gvt. Exh. 13). Detective Farris first advised Defendant of his <u>Miranda</u> rights and obtained a written waiver (Tr. at 42-43; Gvt. Exhs. 11, 13). Defendant then agreed to speak with Detective Farris without having an attorney present (Doc. No. 43; Gvt. Exh. 13). Detective Farris did not make any promises to Defendant to get him to make a statement (Tr. at 43).

12. Defendant told Detective Farris that he was not aware he was being followed by

4

the police (Tr. at 44; Gvt. Exh. 13). He further stated he did not know there was a firearm in the vehicle and that the vehicle belonged to his girlfriend (Tr. at 44; Gvt. Exh. 13). He did not have any information about a recent homicide that occurred at 35th and Park or a recent shooting at 35th and Prospect (Tr. at 49; Gvt. Exh. 13). Defendant kept asking when he would be released, to which Detective Farris responded Defendant would not be released and explained the process of being detained and having an arraignment at the Federal Courthouse (Tr. at 45). The entire interview lasted nine minutes (Tr. at 45; Gvt. Exh. 13).

13. Defendant was not presented to a Jackson County, Missouri magistrate on Sunday, November 3, 2013 (Tr. at 51).

14. Defendant was charged by federal complaint on Monday, November 4, 2013, with being a felon in possession of a firearm; there were no state charges lodged against him (Tr. at 59-60).

15. On Monday, November 4, 2013, Defendant was to be transported to the Federal Courthouse (Tr. at 46, 47, 56). At approximately 11:00 a.m., Detective Manley brought Defendant from the detention unit to a vehicle being driven by Detective Farris (Tr. at 56; Gvt. Exh. 14). While in the elevator, Defendant wanted to talk and did not want to go into federal custody (Tr. at 56; Gvt. Exh. 14). Detective Manley advised Defendant they were still going to his hearing and read Defendant his Miranda warning; Defendant indicated he understood (Tr. at 56, 60, 64-65; Gvt. Exh. 14).

16. Defendant got into the vehicle and asked where they were going (Tr. at 46). Detective Farris responded he was being transported to the Federal Courthouse for a hearing (Tr. at 46). As they approached the Courthouse Defendant asked, "Is that where we're going?" (Tr. at 46-47). Detective Farris responded, "Yes" (Tr. at 47). Defendant then stated, "I don't want

5

to go there. I have stuff to talk about." (Tr. at 47). Detective Farris explained he had to hurry up to make the hearing (Tr. at 47). Defendant expressed that he wanted to talk about what happened, so Detective Farris pulled the car over to the side of the road (Tr. at 47). Detective Manley stated Defendant had been advised of his rights in the elevator at police headquarters, so Detective Farris let Defendant explain what happened and answered the detectives' questions (Tr. at 47). Defendant told the detectives that the firearm found under the seat of the Honda would have his DNA on it (Tr. at 56-57; Gvt. Exh. 14). He also began speaking about recent homicides within the Kansas City area (Tr. at 57). Detective Manley then called the prosecutor and advised him they were going to be late (Tr. at 57). Defendant was taken back to police headquarters where he spoke with multiple homicide detectives (Tr. at 57). Defendant admitted ownership of the firearm found under the driver's seat of the Honda (Tr. at 58; Gvt. Exh. 14).

17. Defendant appeared before United States Magistrate Judge Sarah W. Hays at 3:20 p.m. (Doc. No. 4).

### III. LEGAL ANALYSIS

Defendant seeks suppression of the items recovered from the vehicle he was driving on November 2, 2013 as well as statements he made on November 4, 2013. The propriety of the search and Defendant's statements will be analyzed separately below.

### SEARCH

Defendant first challenges the warrantless search of the vehicle he was driving on November 2, 2013. He argues that because he was arrested on outstanding warrants "there was no need for the police to search the vehicle for fruits of the basis of the arrest." Defendant's argument is foreclosed based on three separate exclusions to the Fourth Amendment's warrant

6

requirement.

As an initial matter, police lawfully performed a traffic stop on the vehicle Defendant was driving due to his outstanding warrants. See United States v. Harper, No. 5:12-cr-50077, 2013 WL 2242772 at *1 (W.D. Ark. May 21, 2013)(citing United States v. Kent, 531 F.3d 642, 650 (8th Cr. 2008)); United States v. Fox, No. 11-00202-01-CR-W-ODS, 2012 WL 1158651 at *5 (W.D. Mo. Feb. 23, 2012). Accordingly, analysis focuses on the recovery of firearms and marijuana from the vehicle.

The firearm found under the driver's seat is admissible under the plain view doctrine. The plain view doctrine provides that "officers may seize an object without a warrant if they are lawfully in a position from which they view the object, the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object." United States v. Beasley, 688 F.3d 523, 530 (8th Cir. 2012)(quoting United States v. Muhammad, 604 F.3d 1022, 1027 (8th Cir. 2010)). See also United States v. Hatten, 68 F.3d 257, 260 (8th Cir. 1995). Here, police did not violate the Fourth Amendment in approaching the vehicle as the traffic stop was lawful, supra. The incriminating character of the gun was immediately apparent to the officers since they had been informed prior to the stop that Defendant had a prior felony conviction. Moreover, Detective Hendershot observed the butt of the handgun under the driver's seat. See Hatten, 68 F.3d at 261 ("Hidden guns, even badly hidden guns, are by their nature incriminating."). The warrantless seizure of the firearm was constitutionally permissible.

The subsequent recovery of marijuana from the console and a second handgun from the trunk is admissible under the inventory search exception. Under this exception, police may "lawfully conduct a warrantless search of an impounded automobile that is designed to produce an inventory of the vehicle's contents." United States v. Marshall, 986 F.2d 1171, 1173 (8th

7

Cir. 1993)(citing South Dakota v. Opperman, 428 U.S. 364, 376 (1976)). See also United States v. Baldenegro-Valdez, 703 F.3d 1117, 1125 (8th Cir. 2013). "Police may take protective custody of a vehicle when they have arrested its occupants, even if it is lawfully parked and poses no public safety hazard." United States v. Arrocha, 713 F.3d 1159, 1163 (8th Cir. 2013)(quoting United States v. Martin, 982 F.2d 1236, 1240 (8th Cir. 1993)). "Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory." Arrocha, 713 F.3d at 1164. Here, Defendant and his two passengers had been arrested, leaving no one to drive the vehicle from the scene. Officers performed an inventory pursuant to Kansas City, Missouri Police Department policy before towing the vehicle. This search did not run afoul to the Fourth Amendment.

The recovery of the second handgun and marijuana is also admissible under the automobile exception. "As long as . . . law enforcement officials have probable cause, they may search an automobile without a warrant under the automobile exception." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." Id. The legal discovery of contraband in one location of a vehicle provides probable cause to search the entire vehicle, including the trunk. See, e.g., United States v. Terry, 400 F.3d 575, 581 (8th Cir. 2005)(legal discovery of ammunition "sufficed to create probable cause . . . to believe that other parts of the vehicle contained additional contraband or evidence"); United States v. Rowland, 341 F.3d 774, 785 (8th Cir. 2003); Fladten, 230 F.3d at 1086; United States v. Munoz, No. 4:08CR3069, 2008 WL 5069822 at *4 (D. Neb. Nov. 21, 2008). Law enforcement in this case knew Defendant

8

had prior felony convictions (Tr. at 30, 59) and was thus prohibited from possessing firearms. Upon viewing the first firearm under the driver's seat, probable cause existed to search the rest of the vehicle. Defendant's motion to suppress the firearms and marijuana should be denied.

## STATEMENTS

Defendant next seeks suppression of the statements he made on November 4, 2013, specifically his admission that the firearm under the seat of the vehicle at the time of this arrest was his. Relying on <u>Corley v. United States</u>, 556 U.S. 303 (2009), Defendant argues these statements are inadmissible since they were made more than six hours after his arrest and before presentment to a magistrate (Doc. No. 29, pp. 3-4). This argument is misplaced.

Although not specifically cited, Defendant's contention that his statements should be suppressed because they "came after more than 6 hours of custody and in a situation when Defendant should have been promptly taken before a Magistrate" implicates 18 U.S.C. § 3501(c).

Section 3501(c) provides:

> In any criminal prosecution by the United States . . . , a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given to the confession is left to the jury and <u>if such confession was made or given by such person within six hours immediately following his arrest or other detention</u> . . .

(emphasis added). The Eighth Circuit has held that this subsection "applies to confessions made <u>after</u> a person is arrested on <u>federal</u> charges." <u>United States v. Pugh</u>, 25 F.3d 669, 674 (8th Cir. 1994)(emphasis in original). In so holding, the <u>Pugh</u> Court quoted the Supreme Court's opinion in <u>United States v. Alvarez-Sanchez</u>, 511 U.S. 350, 358 (1994):

9

the "arrest or other detention" of which the subsection speaks must be an "arrest or other detention" for a violation of federal law . . . . If, instead, the person is arrested and held on state charges, § 3501(c) does not apply, and the safe harbor is not implicated. This is true even if the arresting officers (who, when the arrest is for a violation of state law, almost certainly will be agents of the State or one of its subdivisions) believe or have cause to believe that the person also may have violated federal law . . . . As long as the person is arrested and held only on state charges by state or local authorities, the provisions of § 3501(c) are not triggered.

Id. (emphasis in original).

In this case, Defendant was arrested on November 2, 2013 due to his outstanding warrants. The instant complaint for a violation of federal law was not filed until November 4, 2013 – the same day he was transferred to federal custody and presented to Judge Hays.[1] The record is devoid of any evidence that suggests this is a "rare" case where, "§ 3501(c) is implicated because state and federal officers colluded to deprive a person of his right to a prompt presentment." Pugh, 25 F.3d at 675 n.4 (citing Alvarez-Sanchez, 511 U.S. at 359). In fact, the record shows that it was Defendant who initiated the conversation with Detective Manley during which he made incriminating statements.

Even if § 3501(c) were found to govern Defendant's November 4, 2013 statements, the statements should still be admissible on grounds that the delay beyond the six-hour safe harbor period was reasonable and necessary. Corley, 556 U.S. at 322 ("If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary."). Here, Defendant was arrested on Saturday, November 2, 2013. He appeared before Judge Hays on Monday, November 4, 2014 – the very next business day. Courts have found weekend delays to be reasonable. See, e.g., United

---

[1]The record does not reflect how long Defendant's statements were made after the complaint was filed. Defendant does not seek suppression based on this amount of time but, rather, based on the fact that his statements were made after being held in custody for two days (Doc. No. 29, pp. 3-4).

10

States v. Van Poyck, 77 F.3d 285, 289 (9th Cir. 1996) ("An overnight or weekend delay in arraignment due to the unavailability of a magistrate does not by itself render the delay unreasonable under § 3501(c).")(citing United States v. Mendoza, 473 F.2d 697, 702 (5th Cir. 1973); Gregory v. United States, 364 F.2d 210, 212 (10th Cir.), cert. denied, 385 U.S. 962, 87 S. Ct. 405, 17 L. Ed. 2d 307 (1966); United States v. Collins, 349 F.2d 296, 298 (6th Cir. 1965)); United States v. Borden, 1:08cr130WJG-RHW-2, 2012 WL 4898208 at *2-4 (S.D. Miss. Oct. 15, 2012). Accordingly, Defendant's November 4, 2013, statements should be admissible at trial.

### IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
January 29, 2015

11